**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re | |
| **HELENA CHRISTIAN SCHOOL, INC.,** | Case No. **13-60091-11** |
| Debtor. | |

## MEMORANDUM of DECISION

At Butte in said District this 16th day of September, 2013.

In this Chapter 11 bankruptcy, after due notice, a hearing was held September 10, 2013,

in Butte on: (1) the Second Motion for Relief From the Automatic Stay filed by Mountain West

Bank, N.A. ("Mountain West") on August 7, 2013, docket entry no. 64; (2) Debtor's Motion for

Permission to Mine Real Property filed August 8, 2013, at docket entry no. 66; and (3) approval

of Debtors' Disclosure Statement for Plan of Reorganization, docket entry no. 71.  Also pending

in this case is Debtor's Motion for Permission to File Exhibits Under Seal filed September 5,

2013.  Mountain West was represented at the hearing by Amy Randall of Helena, Montana; and

Debtor was represented at the hearing by J. Colleen Herrington of Bozeman, Montana and Gary

S. Deschenes of Great Falls, Montana.  Culver Varnado, Tim Moore, Raymond Fuller, Robert

("Mike") Dellwo, Jack Hamlin, and Paul Westbrook testified in person, and Robert Shrewsbury

testified by telephone.  Mountain West's Exhibits 1 through 4, and Debtor's Exhibits A, B and G

1

were admitted into evidence.[1]

This Court has jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a). Mountain West' Motion to Modify Stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Mountain West seeks relief from the stay under § 362(d)(1) for "cause" alleging Debtor's lack equity in Mountain West's collateral. This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## FACTS & PROCEDURAL HISTORY

According to the testimony, and as reflected in Debtor's Disclosure Statement, during the 2004/2005 school year, Rocky Mountain Christian High School, grades 9th-12th, and Cornerstone Christian Academy, grades K-8th, merged to create Helena Christian School. Raymond Fuller, the Principal of Rocky Mountain Christian High School, became the Superintendent of Helena Christian School, and Mike Dellwo, the Principal of Cornerstone Christian Academy, became the Principal of Helena Christian School. The two boards of Rocky Mountain Christian High School and Cornerstone Christian Academy merged to create one school Board.

In 2005, Helena Christian School purchased 325 acres of land described as:

Real property located in Lewis & Clark County, State of Montana, described as:

A Tract of land being Government Lots 1, 2, 3, 5, 6, 7, and the E1/2NE1/4 located in Section 11, Township 10 North.,Range 4 East. P.M.M., Lewis and Clark County, Montana, as shown on Retracement Certificate of Survey filed under Document Number 3095203.
AND
The Doctor Steele aka Doc. Steele Lode Mining Claim, M.S. No. 354, Lot 39A,

---

[1] By agreement of the parties, Exhibits A and G were admitted into evidence under seal, as requested in Debtor's pending Motion for Permission to File Exhibits Under Seal.

being located in Section 11, Township 10 North, Range 4 West. P.M.M., Lewis and Clark County, Montana. (Ref: Book 1 Pats. Page 355)

The Doctor Steele aka Doc. Steele Millsite Mining Claim. M.S. No. 354, Lot 39B, being located in Section 11, Township 10 North. Range 4 West. P.M.M., Lewis and Clark County, Montana. (Ref: Book 1 Pats. Page 355)

Lot 44C, being located in the Sam Gaty Lode Mining Claim, M.S. No. 79, lying in Section 11, Township 10 North, Range 4 West, P.M.M., Lewis and Clark County, Montana. (Ref: Patent: Book 298 Deeds, Page 143)

Lot 44D being located in the Sam Gaty Extension Lode Mining Claim, M.S. No. 79, lying in Section 11, Township 10 North, Range 4 West, P.M.M., Lewis and Clark County, Montana.  (Ref. Patent: Book 298 Deeds. Page 143)

The Real Property or its address is commonly known as Cornerstone Village Subdivision, Helena. MT 59602.  The Real Property tax identification number is 1887-11-2-01-16-0001, 1887-11-2-01-07-M000, 1887-11-2-01-09-M000, 1887-11-2-01-15-M000.

("the Property").

The purpose for purchasing the land was to subdivide approximately 300 acres of the land into a 360 single family home neighborhood.  Helena Christian School was going to use the revenue generated from the development to build a new facility to house the school on the remaining acreage.  Helena Christian School purchased the land with a loan from American Federal Savings Bank, and the help of six guarantors.[2]  In 2008, American Federal Savings Bank notified Helena Christian School that it would provide no further infrastructure funding to Helena Christian School.  As explained in Debtor's Disclosure Statement,

[I]t was at this time that Mountain West Bank purchased the original land loan from American Federal Savings Bank. A third loan that was a line of credit was eventually rolled into the original land loan along with the second loan. The two loans, the line of credit, plus the interest makes up what we owe Mountain West Bank today.

_____

[2]  A seventh guarantor stepped in approximately a year later.

3

Helena Christian School's proposed subdivision was met with opposition by neighbors of the Property. The Property was eventually rezoned, which capped the number of lots Helena Christian School could put on its Property at thirty two. Before Helena Christian School could secure approval of a 32-lot subdivision, Mountain West notified Helena Christian School in 2010 that the property had only appraised for $500,000 and that it wanted $1,000,000 from the guarantors within thirty days. The guarantors did not make the $1,000,000 payment and Mountain West commenced foreclosure.

Debtor filed a voluntary Chapter 11 bankruptcy petition on January 29, 2013. Mountain West filed an earlier motion to modify stay on March 9, 2013. In a request for extension of time to respond to the March 9, 2013, motion, Debtor's counsel represented that the Debtor had received an offer from a third party to purchase Mountain West's collateral, that the sale was expected to close on or before April 2, 2013, and that if the sale was completed, Mountain West's motion to modify stay would be moot and this case would most likely be dismissed. Debtor filed several more requests seeking additional time to respond to Mountain West's March 9, 2013, motion. Debtor finally filed an objection on May 15, 2013. A hearing on Mountain West's motion was held July 9, 2013, at which time the Court denied Mountain West Bank's motion, without prejudice. The Court explained in an Order entered that same date:

> Mountain West Bank, N.A. asserts in its Motion, and Ron Zeiler confirmed, that Debtor owes Mountain West Bank, N.A. in excess of $1.8 million. Debtor has not made a payment to Mountain West Bank, N.A. since July of 2010. Whether Debtor has any equity in the subject property turns on the value of the property. Debtor values the property at $845,000 in its schedules. Mountain West Bank, N.A. similarly contends the value of Debtor's property is $845,000, based upon an appraisal done by Moore Appraisals, Inc. as of January 4, 2013. Mountain West Bank, N.A., however, failed to call the appraiser as a

witness.  In addition, Mountain West Bank, N.A. failed to identify, prior to the hearing, any exhibits and failed to introduce any exhibits into evidence.  Based upon Mountain West Bank, N.A.'s failure to call Tim Moore as a witness, coupled with Mountain West Bank, N.A.'s failure to introduce a single exhibit into evidence, the Court finds that Mountain West Bank, N.A. has not sustained its burden of proof.

Mountain West filed its Second Motion to Modify Stay on August 7, 2013.  Debtors filed opposition to Mountain West's Motion on August 22, 2013.  A preliminary hearing on Mountain West's Motion to Modify Stay was held telephonically on September 4, 2013.

The facts discussed above have not changed since the July 9, 2013, hearing.  Debtor owed Mountain West $1,906,868.00 as of September 9, 2013.  The debt stems from a Promissory Note in the principal amount of $90,000.00 dated August 9, 2005, and a Promissory Note in the principal amount of $1,500,993.77 dated December 29, 2008.  The December 29, 2008, Promissory Note is secured by a mortgage against the Property.  Debtor has not made a payment to Mountain West in over three years.  Tim Moore appraised the Property and concluded that as of January 4, 2013, the Property had a value of $845,000.00.  Tim Moore testified that his opinion of value was based on his conclusion that the highest and best use from the Property was to hold it for future development.  Tim Moore testified that the Property was mined extensively some time ago.  Jack Hamlin testified that the property was mined between 1880 and 1970.

Helena Christian School does not dispute the amount Mountain West claims it is owed.  Rather, Debtor argues that the highest and best use of the property is for mining and that if the property is mined, it is worth $20 million, based upon an alleged report prepared by an unidentified geologist.  *See* Disclosure Statement, docket entry no. 71, p.1.  Helena Christian School also contends in its Objection to Second Motion to Modify Stay, docket entry no. 78, that

it "received a geologist's report that indicates large deposits of silver and gold ore that could produce up to $20 million dollars in revenue, which will be provided to the Court under seal at the time of the hearing."

Helena Christian School has not provided the Court with a geologist's report. Instead, Debtor provided the Court with colored aerial photographs on which Robert Shrewsbury, who has worked in the precious metals business for forty years, drew lines and marks, supposedly indicating the level and intensity of gold and silver on the Property. Robert Shrewsbury testified that he has developed a process for determining whether there are precious metals present on real property. Robert Shrewsbury's testimony about the process he developed was vague, and the Court was not provided with any test results or reports. As mentioned above, the only evidence presented by the Debtor consisted of Exhibit A, which is a collection of satellite images obtained from google earth that Robert Shrewsbury then marked with lines and push pin images, and Exhibit G, which is an aerial photograph taken by an airplane pilot. On page 1 of Exhibit A, the push pins supposedly mark the fourteen gold deposits on the Property, showing that the gold or other metals are located in a diagonal line running from the Northwest corner of the Property to the Southeast corner of the Property. The other exhibits presented by the Debtor are two documents, the first being an unsigned document identifying a 36 month flex certificate opened September 16, 2011, in the amount of $1,000.00 and the second showing that a $750.00 36-month certificate of deposit opened on November 4, 2011, was updated on August 28, 2013, to reflect "HELENA CHRISTIAN SCHOOL INC" and "DEQ-EMB" as the owners. The aforementioned certificates of deposit were put in the Debtor's name as a requirement of Montana's Department of Environmental Quality.

6

In opposition to Mountain West's Motion to Modify Stay and in support of its Motion to Mine, Debtor proposes to extract gold from the property and repay its creditors. Debtor, however, has no formal agreement with the people who are interested in mining the property. Also, in response to concerns raised by Mountain West that Debtor's proposal to mine the Property is contrary to the nuisance and waste provision set forth in the Mortgage recorded in Lewis and Clark County on January 2, 2009, Debtor claims there will be no waste of the property because any reclamation is protected by the certificates of deposit. Debtor does not propose any type of adequate protection payment to Mountain West, other than its representation that there will be no waste to the Property because any reclamation associated with its gold mining is covered by a bond required by the Department of Environmental Quality.

## DISCUSSION

Mountain West's Motion to Modify stay is based upon § 362(d)(1). Section 362(d)(1) allows for the granting of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"  This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000):

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances. The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause".[3] What

[3] Section 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section , such as by terminating, annulling, modifying, or conditioning such stay–

constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166. *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

A certified real estate appraiser, Tim Moore, determined that the Property has a value of $845,000.00. Debtor does not dispute Moore's valuation of $845,000, which assumes the highest and best use of the Property is to hold it and develop it into a large lot subdivision. Instead, Debtor argues that Moore's valuation is not based upon the highest and best use of the Property, which Debtor argues is mining. According to Robert Shrewsbury, he visited the property and using a method and equipment he developed, he can determine the depth and conductivity of minerals underground and he can roughly quantify the amount of minerals. Shrewsbury did not describe with any particularity his process, his equipment, and he has not completed any type of report. Shrewsbury merely concluded that there could be as much as $60 million of gold on the Property. The Court is apparently supposed to accept Shrewsbury's conclusions based upon satellite photographs obtained from google earth and from an aerial

_____

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

photograph taken by an unidentified airplane pilot, on which Shrewsbury then drew lines and placed push pins.  Without more then the pictures and Shrewsbury's bald opinion, this Court gives little weight to the value asserted by Debtor.  Rather, the Court gives the greatest amount of weight to Moore's opinion that the Property is worth $845,000.00.  Mountain West is owed $1,906,868.00.  Debtor has no equity in the Property, and it does not propose to provide any other type of adequate protection to Mountain West.

This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D. Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*,86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "[2, 3] In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In

9

> determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."

*In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984) addressed the issue on a basis of "equity cushion" as adequate protection in holding:

> "While the term 'adequate protection' is not defined in the code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent. *In re Curtis*, 9 B.R. 110, 111-112 (B.Ct.E.D.Penn.1981).

An equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the code.  *In re Interstate Distributing Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (*citing In re Mellor*,  734 F.2d 1400).

The Court has already concluded Debtor does not have any equity in the Property.  In addition, Debtor offers no other form of adequate protection.  The Court notes that a hearing on a motion to modify stay is a summary proceeding in which a court should seek only to determine whether the party seeking relief has a colorable claim to property of the estate, and the expedited nature of the hearing "limits the court's ability to make a full adjudication of the merits of the parties' claims."  *In re Luz Intern., Ltd.*, 219 B.R. 837, 842 (9th Cir. BAP 1998), citing *In re Johnson*, 756 F.2d 738, 740 (9th Cir.), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) ("Hearings on relief from the automatic stay are thus handled in a summary fashion.  The

validity of the claim or contract underlying the claim is not litigated during the hearing."). For

the reasons discussed above, the Court concludes that Mountain West has a colorable claim.

Therefore, exercising its broad discretion, the Court finds cause exists to lift the automatic under

§ 362(d)(1).

Consistent with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtor's Motion for Permission to File Exhibits Under Seal filed

September 5, 2013, at docket entry no. 84, is granted.

IT IS FURTHER ORDERED that Mountain West Banks's Motion to Modify Stay filed

August 7, 2013, at docket entry no. 64, is GRANTED; and the stay afforded by § 362(a) of the

Bankruptcy Code is modified to permit Mountain West Bank to pursue its nonbankruptcy

remedies with respect to the following property of the estate:

Real property located in Lewis & Clark County, State of Montana, described as:

A Tract of land being Government Lots 1, 2, 3, 5, 6, 7, and the E1/2NE1/4 located in Section 11, Township 10 North.,Range 4 East. P.M.M., Lewis and Clark County, Montana, as shown on Retracement Certificate of Survey filed under Document Number 3095203.

AND

The Doctor Steele aka Doc. Steele Lode Mining Claim, M.S. No. 354, Lot 39A, being located in Section 11, Township 10 North, Range 4 West. P.M.M., Lewis and Clark County, Montana. (Ref: Book 1 Pats. Page 355)

The Doctor Steele aka Doc. Steele Millsite Mining Claim. M.S. No. 354, Lot 39B, being located in Section 11, Township 10 North. Range 4 West. P.M.M., Lewis and Clark County, Montana. (Ref: Book 1 Pats. Page 355)

Lot 44C, being located in the Sam Gaty Lode Mining Claim, M.S. No. 79, lying in Section 11, Township 10 North, Range 4 West, P.M.M., Lewis and Clark County, Montana. (Ref: Patent: Book 298 Deeds, Page 143)

Lot 44D being located in the Sam Gaty Extension Lode Mining Claim, M.S. No. 79, lying in Section 11, Township 10 North, Range 4 West, P.M.M., Lewis and Clark County, Montana.  (Ref. Patent: Book 298 Deeds. Page 143)

The Real Property or its address is commonly known as Cornerstone Village Subdivision, Helena. MT 59602.  The Real Property tax identification number is 1887-11-2-01-16-0001, 1887-11-2-01-07-M000, 1887-11-2-01-09-M000, 1887-11-2-01-15-M000.

IT IS FURTHER ORDERED that Debtor's Motion for Permission to Mine Real Property filed August 8, 2013, at docket entry no. 66, is denied, without prejudice, as moot.

IT IS FURTHER ORDERED that the hearing on approval of Debtor's Disclosure Statement is continued to **Tuesday, October 8, 2013, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA; and any amendments to Debtor's Disclosure Statement shall be made on or before September 30, 2013.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

12